IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |  |
|---|---|---|
| MARILYN MITCHELL, | ) | |
| Plaintiff, | ) | |
| vs. | ) | No. 12-2859-JDT-dkv |
| MARIE KIRK OWENS, CITY OF MEMPHIS, and JOHN DOES 1-20, | ) | |
| Defendants. | ) | |

REPORT AND RECOMMENDATION FOR *SUA SPONTE* DISMISSAL

On September 28, 2012, the plaintiff, Marilyn Mitchell, a resident of Shelby County, Tennessee, filed a *pro se* Complaint to Restrict and Prohibit Foreclosure and Sale, for Damages, Demand for Trial, and Civil Rights Violation Pursuant to 42 U.S.C.A. § 1983,[1] (D.E. 1), accompanied by a motion seeking leave to proceed *in forma pauperis*, (D.E. 2). On September 28, 2012, the court issued an order directing Mitchell to file a properly completed *in forma pauperis* affidavit or pay the civil filing fee. (D.E. 3.) Mitchell filed the completed affidavit on October 3, (D.E. 4), and on October 4,

---

[1] The complaint is obviously a form complaint used by other *pro se* plaintiffs in this district in similar lawsuits. The complaint refers to the laws of other states, (*see, e.g.*, ¶¶ 33-34, 42-43), and references the wrong district of court, the "Northern District of Tennessee," (*see, e.g.*, ¶ 10). Indeed, the nearly identical complaint was filed in *Nooh v. Recontruct Co.*, No. 11-2506-STA-dkv (W.D. Tenn. June 20, 2011), ECF No. 1 (dismissed Mar. 29, 2012).

2012, the court issued an order granting Mitchell leave to proceed *in forma pauperis*, (D.E. 5), and referred the case to the *pro se* staff attorney for screening pursuant to Local Rule 4.1. This case has now been referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate. (Order of Reference, D.E. 6.) For the reasons that follow, it is recommended that this case be dismissed for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted.[2]

## I. PROPOSED FINDINGS OF FACT

This is an action to prohibit a nonjudicial foreclosure of real property located at 482 East Mallory Avenue, Memphis, Tennessee 38106 ("the Real Property"). Named as defendants are Marie Kirk Owens, who is the Treasurer for the City of Memphis; the City of Memphis; and John Does 1-20.[3] According to the complaint, on or about August 9, 2012, Mitchell received a notice of default sale from the defendant Owens. (Compl., D.E. 1 ¶ 16.)

---

[2]     Mitchell filed a nearly identical complaint against Shelby County and David Lenoir, County Trustee, arising out of failure to pay county realty taxes: Complaint, *Mitchell v. Lenoir, et al.*, No. 12-2843-SMH-dkv (W.D. Tenn. filed Sept. 25, 2012), ECF No. 1 (report and recommendation for dismissal issued May 13, 2013). It was recommended that that case be dismissed as well.

[3]     Service of process cannot be made on unnamed or fictitious parties. The filing of a complaint against "John Doe" defendants does not toll the running of the statute of limitations against those parties. *See Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996); *Bufalino v. Michigan Bell Tel. Co.*, 404 F.2d 1023, 1028 (6th Cir. 1968). Accordingly, it is recommended that the complaint be dismissed against the John Doe defendants.

The complaint states that Mitchell received a statement indicating an amount due as real estate taxes. (*Id.* ¶ 38.) Attached to the complaint as Exhibit 1 is a City of Memphis, Tennessee Tax Bill from Marie Kirk Owens, Treasurer, to Marilyn Mitchell, indicating that $5,816.32 was due by October 31, 2012, for 2011 and prior years of City of Memphis realty taxes on the property located at 482 Mallory, Memphis, Tennessee, parcel 049010000030. (*Id.*, Ex. 1.) The complaint further alleges that on July 20, 2012, Mitchell attempted to pay the balance due on her taxes by an electronic funds transfer ("EFT") in the amount of $6,000 sent by certified mail to Owens, that Owens received the EFT on July 20, 2012, that Owens refused to accept the EFT, and that Owens failed to return the EFT instrument. (*Id.* ¶¶ 14-15, 36-39.) Attached to the complaint as exhibits are: (1) a USPS Track & Confirm receipt without label number, indicating delivery of First Class Mail on July 20, 2012, but without indication to whom the mail was addressed, (2) a City of Memphis, Tennessee Tax Bill, (3) an item that is similar to a check from Jimmy Young on a Suntrust account in the amount of $6,000, which is marked "EFT only," "FOR DISCHARGE OF DEBT," "acct #04901000030" on the front, and a copy of an unsigned Return Receipt Card and U.S. Postal Service Certified Mail Receipt for Article Number 7012 0470 0000 0195 7661, and (4) a letter from Linebarger Goggan Blair & Sampson, LLP, dated August 9, 2012, advising Mitchell of the foreclosure sale of the property unless the taxes were paid in full immediately. (*Id.*, Exs. 1-4.) Mitchell contends that the refusal to credit her account or return the EFT instrument has discharged her city realty taxes on the property in question. (*Id.*

¶¶ 39, 41.)   The complaint sets forth the following causes of action: (1) injunctive relief, (*id.* ¶¶ 17-23); (2) declaratory relief, (*id.* ¶¶ 24-27); (3) fraud and misrepresentation, (*id.* ¶¶ 28-34); (4) wrongful foreclosure, (*id.* ¶¶ 35-39); (5) debt is discharged/payed [sic], (*id.* ¶¶ 40-44); (6) slander of title, (*id.* ¶¶ 45-47); (7) unlawful interference with possessory interest, (*id.* ¶¶ 48-51); (8) conflict of interest, (*id.* ¶¶ 52-54); (9) lack of standing to commence foreclosure action, (*id.* ¶¶ 55-58); and (10) deprivation of rights pursuant to 42 U.S.C.A. § 1983, (*id.* ¶¶ 59-60). Mitchell seeks preliminary and permanent injunctive relief enjoining the defendant from foreclosing on her house, declaratory relief including a declaration that the defendants have no enforceable lien on her house, reinstatement of Mitchell on the title to the property, cancellation of the foreclosure sale, and compensatory and punitive damages.

## II.   PROPOSED CONCLUSIONS OF LAW

A.   <u>28 U.S.C. § 1915(e)(2) Screening</u>

Pursuant to Local Rule 4.1(a), service will not issue in a *pro se* case where the *pro se* plaintiff has been granted leave to proceed *in forma pauperis* until the complaint has been screened under 28 U.S.C. § 1915(e)(2).  The clerk is authorized to issue summonses to *pro se* litigants only after this review is complete and an order of the court issues.  This report and recommendation will constitute the court's screening.

The court is required to screen *in forma pauperis* complaints and to dismiss any complaint, or any portion thereof, if the action (i)is frivolous or malicious; (ii) fails to state a claim on which relief

may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2).

B.  Standard of Review for Failure to State a Claim

    In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied.  *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010).  "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'"  *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) (alteration in original).  "[P]leadings that . . . are no more than conclusions[] are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief.  Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

    "*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed."  *Williams*, 631 F.3d at 383 (internal quotation marks omitted).  *Pro se* litigants, however, are not exempt from the

requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 Fed. App'x 608, 613 (6th Cir. 2011)("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading")(internal quotation marks omitted); *Payne v. Sec'y of Treas.*, 73 Fed. App'x 836, 837 (6th Cir. 2003)(affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004)("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 Fed. App'x 506, 510 (6th Cir. 2011)("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants.  Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party.  While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

C.  Subject-Matter Jurisdiction

As an initial matter, the court must determine whether it has subject-matter jurisdiction over this action.  "Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree.  It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v.*

*Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *see also Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)("Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto."); *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982)("Federal courts are courts of limited jurisdiction. The character of the controversies over which federal judicial authority may extend are delineated in Art. III, § 2, cl. 1. Jurisdiction of the lower federal courts is further limited to those subjects encompassed within a statutory grant of jurisdiction."); *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978)("It is a fundamental precept that federal courts are courts of limited jurisdiction."). Federal courts are obliged to act *sua sponte* whenever a question about jurisdiction arises. *See, e.g., Ins. Corp. of Ireland, Ltd.*, 456 U.S. at 702 (stating that "a court, including an appellate court, will raise lack of subject-matter jurisdiction on its own motion"); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 287 n.10 (1938); *Answers in Genesis, Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009)("[F]ederal courts have a duty to consider their subject matter jurisdiction in regard to every case and may raise the issue *sua sponte.*"). Under Rule 12(h)(3) of the Federal Rules of Civil Procedure, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."

In her complaint, Mitchell alleges the following bases for this court's jurisdiction:

The United States District Court for the Northern [sic] District of Tennessee has jurisdiction based on "diversity jurisdiction" pursuant to The <u>United States Constitution, Article III, § 2</u> and 28 U.S.C. § 1331. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 2241 because Pending foreclosure sale on Plaintiff's real property is in violation of the Constitution and laws of the United States. The Court has jurisdiction under 28 U.S.C. § 1332, in that the amount in controversy is in excess of $75,000.00. The Plaintiff also invokes the jurisdiction of this Court pursuant to 28 U.S.C. § 1343(4) in that the Plaintiff seeks to redress deprivation of rights guaranteed by both the Constitution and federal statutes.

(Compl., D.E. 1 ¶ 10 (emphasis in original).)

1. *Diversity Jurisdiction*

According to 28 U.S.C. § 1332, "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." Mitchell has failed to allege sufficient facts in her complaint to establish diversity jurisdiction. Diversity of citizenship means that the action is between "citizens of different States." 28 U.S.C. § 1332(a).[4] A federal court has jurisdiction under § 1332 only if there is "complete diversity between all plaintiffs and all defendants." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005). "To establish diversity jurisdiction, one must plead the citizenship of the corporate and individual parties." *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 792 n.20 (D.C. Cir. 1983); *see also Johnson v. New York*, 315 Fed. App'x 394, 395 (3d Cir.

---

[4] The complaint mis-cites 28 U.S.C. § 1331 as governing diversity jurisdiction. That statute addresses federal-question jurisdiction.

8

2009)(per curiam); *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987)(complaint did not properly allege diversity jurisdiction); *Leys v. Lowe's Home Ctrs., Inc.*, 601 F. Supp. 2d 908, 912-13 (W.D. Mich. 2009)(complaint and notice of removal did not adequately establish diversity jurisdiction); *Ellis v. Kaye-Kibbey*, No. 1:07-cv-910, 2008 WL 2696891, at *2-3 (W.D. Mich. July 1, 2008) (dismissing complaint for failure adequately to allege facts establishing diversity of citizenship despite conclusory allegation that diversity exists); 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1208 (3d ed. 2004). Pursuant to 28 U.S.C. § 1332(c)(1), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."

The complaint does not allege the citizenship of any of the parties. The complaint states Mitchell is "residing at c/o 482 E. Mallory, Memphis, Shelby County, Tennessee," but the complaint does not allege her citizenship. (*See* Compl., D.E. 1 ¶ 1.) The complaint alleges that the defendant Marie Kirk Owens is a resident of Shelby County, Tennessee, and City Treasurer and that the defendant Shelby County is organized under the laws of Tennessee and based in the city of Memphis, Tennessee. Thus, the court lacks diversity jurisdiction.

2. *Jurisdiction under 28 U.S.C. § 2241*

The other statutes cited by Mitchell are insufficient to confer federal jurisdiction. Section 2241 of Title 28, which governs writs of habeas corpus, requires that the movant be "in custody." *See* 28

U.S.C. § 2241(c).  Mitchell is not a prisoner; therefore the court lacks subject-matter jurisdiction under 28 U.S.C. § 2241.

    3.  *Jurisdiction under 28 U.S.C. § 1343(4)*

Mitchell also cites 28 U.S.C. § 1343(4), which confers federal jurisdiction over suits "[t]o recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote." 28 U.S.C. § 1343(a)(4).  The Supreme Court has rejected the position that § 1343(4), now § 1343(a)(4), "encompass[es] all federal statutory suits," *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979), or "allow[s] jurisdiction without respect to the amount in controversy for claims which in fact have nothing to do with 'civil rights,'" *id.* at 620.

> [T]he Congress that enacted § 1343(4) was primarily concerned with providing jurisdiction for actions dealing with the civil rights enumerated in 42 U.S.C. § 1985, and most notably the right to vote. While the words of [that] statute[] are not limited to the precise claims which motivated their passage, it is inappropriate to read the jurisdictional provisions to encompass new claims which fall well outside the common understanding of their terms.

*Id.* at 621.

In *Chapman*, the Supreme Court held that the Social Security Act is not a statute providing for "civil rights" within the meaning of § 1343(a)(4).  *Id.* at 623.  Similarly, Mitchell's complaint in this case does not allege a violation of any federal statute providing for the protection of civil rights.  Although the complaint contains scattered references to federal statutes, (*see, e.g.*, Compl., D.E. 1 ¶¶ 18, 22-23 (referring to "FDCA" without citation or elaboration), ¶ 51 ("Public Law Volume 13 of the 38th Congress Stat 99-118"), ¶ 56

(Defendants "conducted an illegal enterprise within the meaning of RICO statute"), and ¶ 57 ("civil RICO")), none of these federal statutes referenced in Mitchell's complaint provides for the protection of civil rights. Therefore, there is no jurisdiction under 28 U.S.C. § 1343(a)(4).

4. *Federal Jurisdiction under 28 U.S.C. § 1331*

It is also necessary to consider whether there might be subject-matter jurisdiction under 28 U.S.C. § 1331, which provides for federal jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." Despite scattered references to the United States Constitution, the complaint does not allege a constitutional violation nor is there any allegation that the defendants have violated any treaty.

The complaint does not assert a claim arising under any federal statute, either. Even if the scattered references in the complaint to various federal statutes were construed as asserting claims under those statutes, the complaint still does not sufficiently allege a viable federal claim.

a. Claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*

The complaint refers, in passing, to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.* These references are also found in the count entitled "Defendants Lack Standing to Commence Foreclosure Action," (Compl., D.E. 1 ¶¶ 55-58). Specifically, paragraphs 56 and 57 state as follows:

> 56. On information and belief all defendants share in the illegal proceeds of the transaction; conspired with each other to defraud the Plaintiff out of the proceeds of payment; acted in concert to wrongfully deprive the

Plaintiff of her home; acted/acting in concert and
conspiracy to essentially steal the Plaintiff home and/or
convert the Plaintiff's home without providing Plaintiff
reasonable equivalent value in exchange; and conducted an
illegal enterprise within the meaning of RICO statute.

57. The Supreme Court found that the Plaintiff in a
civil RICO action need establish only a criminal
"violation" and not a criminal conviction. Further, the
Court held that the Defendant need only have caused harm
to the Plaintiff by the commission of a predicate offense
in such a way as to constitute a "pattern of racketeering
activity." That is, the Plaintiff need not demonstrate that
the Defendant is an organized crime figure, a mobster in
the popular sense, or that the Plaintiff has suffered some
type of special Racketeering injury; all that the Plaintiff
must show is what the Statute specifically requires. The
RICO Statute and the civil remedies for its violation are
to be liberally construed to effect the congressional
purpose as broadly formulated in the Statute. *Sedima, SPRL
v. Imrex Co.*, 473 US 479 (1985).

(Compl., D.E. 1 ¶¶ 56-57.)

The complaint does not identify the provisions of RICO that

defendants allegedly violated, but the court assumes that Mitchell

is proceeding under Section 1964(c), RICO's provision authorizing

civil suits for a violation of 18 U.S.C. § 1962. It provides

provides in pertinent part that:

Any person injured in his business or property by reason
of a violation of section 1962 of this chapter may sue
therefor in any appropriate United States district court
. . . .

18 U.S.C. § 1964(c). To establish a violation of Section 1962,[5] a

plaintiff must show: "(1) that there were two or more predicate

---

[5]     18 U.S.C. § 1962(c) provides:

It shall be unlawful for any person employed by or associated with
any enterprise engaged in, or the activities of which affect,
interstate or foreign commerce, to conduct or participate, directly
or indirectly, in the conduct of such enterprise's affairs through
a pattern of racketeering activity or collection of unlawful debt.

offenses; (2) that an 'enterprise' existed; (3) that there was a nexus between the pattern of racketeering activity and the enterprise; and (4) that an injury to business or property occurred as a result of the above three factors." *VanDenBroeck v. CommonPoint Mortg. Co.*, 210 F.3d 696, 699 (6th Cir. 2000), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008). An "enterprise" can be proven by showing that a group of persons formed an ongoing organization; (2) that they functioned as a continuing unit; and (3) that the organization was separate from the pattern of racketeering activity in which it engaged. *Id.* RICO defines racketeering activity to include any act that is indictable under certain provisions of title 18 of the United States Code, including wire fraud, 18 U.S.C. § 1343, and mail fraud, 18 U.S.C. § 1341.

The complaint contains no factual allegations that support the elements of a civil RICO cause of action. There are no allegations of an enterprise, of two or more predicate offenses, or of an injury given that the foreclosure has not taken place.

Assuming Mitchell's allegations of fraud are meant to be the underlying predicate offense, her complaint still fails to state a civil RICO cause of action. A civil RICO claim based on allegations of fraud must also comply with the particularity pleading requirement of Rule 9 of the Federal Rules of Civil Procedure. *Brown v. Cassens Transp. Co.*, 546 F.3d 347, 356 n.4 (6th Cir. 2008); *Blount Fin. Servs., Inc. v. Walter E. Heller & Co.*, 819 F.2d 151, 152-53 (6th Cir. 1987); *Flores v. Emerich & Fike*, 416 F. Supp. 2d 885, 911 (E.D. Cal. 2006). Rule 9 requires that, "[i]n alleging fraud or mistake,

a party must state with particularity the circumstances constituting fraud or mistake." "The Plaintiff[] must plead more than a generalized grievance against a collective group of Defendants in order to meet the requirements of FRCP 9(b)." *Masterson v. Meade Cnty. Fiscal Court*, 489 F. Supp. 2d 740, 749 (W.D. Ky. 2007)(citing *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003)).

To comply with Rule 9(b), a complaint alleging a fraudulent representation "must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008)(quoting *Gupta v. Terra Nitrogen Corp.*, 10 F. Supp. 2d 879, 883 (N.D. Ohio 1998)). A plaintiff must, "[a]t a minimum," "allege the time, place and contents of the misrepresentations upon which [he] relied." *Id.* (citing *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984)). "Generalized and conclusory allegations that the Defendants' conduct was fraudulent do not satisfy Rule 9(b)." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361 (6th Cir. 2001). A plaintiff who asserts a claim based on a failure to disclose must plead all the elements with particularity. 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1297, at 72-73, 101 (3d ed. 2004).

In her complaint, Mitchell fails to identify any false statement allegedly made by any defendant nor much less the time and date of any false representation. Mitchell's complaint merely cites the elements of a cause of action for fraud and includes no factual

allegations.  Accordingly, Mitchell fails to plead fraud with the particularity required by Rule 9.  Therefore, the various references to RICO are insufficient to state a civil RICO claim and cannot form the basis for federal-question jurisdiction.

> b.   Claims under the Electronic Funds Transfer Act, 15 U.S.C. §§ 1693 *et seq.*

The references to the EFT are insufficient to invoke federal-question jurisdiction.  These references are found primarily in the counts entitled "Wrongful Foreclosure," (Compl., D.E. 1 ¶¶ 35-39), and "The Debt is Discharged/Payed [sic]," (Compl., D.E. 1 ¶¶ 40-44).

The Electronic Funds Transfer Act, 15 U.S.C. §§ 1693 *et seq.* ("EFTA") was enacted as part of the comprehensive Consumer Credit Protection Act, 15 U.S.C. §§ 1601-1693r ("CCPA") and "protects individual consumer rights by 'provid[ing] a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems.'"  *Clemmer v. Key Bank Nat'l Ass'n*, 539 F.3d 349, 351 (6th Cir. 2008)(citing 15 U.S.C. § 1693(b)).  Because EFTA is a remedial statute, it is accorded "'a broad, liberal construction in favor of the consumer.'"  *Id.* (quoting *Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 163 F.3d 948, 950 (6th Cir. 1998)).

Under the EFTA, the term "electronic fund transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, that is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term includes, but is not

15

limited to, point-of-sale transfers, automated teller machine transactions, direct deposits or withdrawals of funds, and transfers initiated by telephone. 15 U.S.C. § 1693a(7). Electronic fund transfers covered by the Act have three components: 1) a transfer of funds, 2) initiation by electronic means, and 3) a debit or credit to a consumer account.

Here, Mitchell alleges in her complaint that she initiated an EFT transfer by certified mail, not by electronic transfer. Her attempted transaction is therefore clearly not covered by the EFTA. Accordingly, the complaint fails to state a claim under the EFTA, and EFTA is not a basis for federal-question jurisdiction.

> c. Claims under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.*

The three references to the "FDCA" in the complaint, which the court interprets to be the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, are insufficient to state a claim because the complaint fails to allege that either of the defendants is a "debt collector" within the meaning of the statute, (*see Compl.*, D.E. 1 ¶¶ 18, 22-23). See *Collins v. Mortg. Elec. Registration Sys., Inc.*, No. 3:11-cv-00264, 2012 WL 610191, at *7 (M.D. Tenn. Feb. 24, 2012)(dismissing FDCPA claim "[b]ecause the instant Defendants are not creditors"), *report and recommendation adopted*, 2012 WL 848041 (M.D. Tenn. Mar. 12, 2011). Mitchell's complaint fails to allege facts demonstrating that either Owens or the City of Memphis's principal purpose is collecting debts. Accordingly, it is recommended that any claims under the FDCPA be dismissed for failure to state a claim.

16

d.    Claim For Deprivation of Rights Under 42 U.S.C. §§
                1983 and 1988 (Compl., D.E. 1 ¶¶ 59-60)

          (i) Section 1983

     Mitchell purports to state a procedural due process claim under
the two-paragraph count entitled "Claim for Deprivation of Rights
under 42 U.S.C. § 1983." She alleges, in the first paragraph, in a
conclusory manner:

          Such unlawful actions by the defendants constitutes (sic)
          deprivation of rights accorded to plaintiff pursuant to the
          Due Process Clause of the Fourteenth Amendment of the
          United States Constitution under color of law.

(Compl., D.E. 1 ¶ 59.)    Mitchell, however, does not support this
conclusory allegation with any underlying factual allegations
sufficient to establish the elements of a procedural due process
claim under Section 1983.

     The Due Process Clause of the Fourteenth Amendment prohibits
states from depriving "any person of life, liberty, or property,
without due process of law." U.S. Const. amend. XIV, § 1.   In order
"[t]o state a claim under § 1983, a plaintiff must allege the
violation of a right secured by the Constitution and laws of the
United States and must show that the alleged deprivation was
committed by a person acting under color of state law." *Leach v.
Shelby Cnty. Sheriff*, 891 F.2d 1241, 1244 (6th Cir. 1989)(quoting
*West v. Atkins*, 487 U.S. 42, 48 (1988)).

          In procedural due process claims, the deprivation by state
          action of a constitutionally protected interest in "life,
          liberty, or property" is not in itself unconstitutional;
          what is unconstitutional is the deprivation of such an
          interest without due process of law. *Parratt v. Taylor*,
          451 U.S. 527, 537, 101 S. Ct. 1908 at 1913 , 68 L. Ed.2d
          420(1981); *Carey v. Piphus*, 435 U.S. 247, 259, 98 S. Ct.
          1042, 1050, 55 L. Ed.2d 252 (1978)("Procedural due process

                                   17

> rules are meant to protect persons not from the
> deprivation, but from the mistaken or unjustified
> deprivation of life, liberty, or property"). The
> constitutional violation actionable under § 1983 is not
> complete when the deprivation occurs; it is not complete
> unless and until the State fails to provide due process.

*Zinermon v. Burch*, 494 U.S. 113, 125-26 (1990)(footnote omitted).

Mitchell cannot demonstrate that Owens, in her official capacity as City Treasurer, or the City of Memphis have deprived her of the Real Property without due process as required to state a claim under 42 U.S.C. § 1983. In a section 1983 official-capacity claim against a municipal official, the real party in interest is the municipality, not the individual official sued in his official capacity. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)(quoting *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 690 n.55 (1978)); *Wilson v. Civil Town of Clayton, Ind.*, 839 F.2d 375, 381-382 (7th Cir. 1988). Thus, to the extent Owens is sued in her official capacity, the claim against Owens is in essence a claim against the City of Memphis. An essential element of a section 1983 claim against a municipality, and correspondingly an official-capacity suit, is that the act or omission of a state employee was made pursuant to a custom or policy of the municipality. *Monell*, 436 U.S. at 691-92. Mitchell has not alleged any unconstitutional policy or practice. Thus, Mitchell's allegations against Owens in her official capacity and against the City of Memphis fail to state a claim for which relief can be granted.

Under the *Parratt/Hudson* doctrine, "an unauthorized . . . deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause

of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Parratt v. Taylor*, 451 U.S. 527, 543-544 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 330-31 (1986); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Generally, claims for deprivation of property without due process are not actionable under section 1983 if the deprivation of property could not have been anticipated and adequate state remedies are available to redress the deprivation. *Zinermon*, 494 U.S. at 132; *see also Hudson,* 468 U.S. at 535-36; *Parratt*, 451 U.S. at 543-44, *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 330-31 (1986); *Smith v. Rose*, 760 F.2d 102, 106 (6th Cir. 1985); *Brooks v. Dutton*, 751 F.2d 197, 199 (6th Cir. 1985).

To the extent Mitchell claims the threatened default sale of the Real Property was the subject of a state administrative forfeiture, she had the right to contest the administrative proceeding and to seek judicial review of that proceeding in state court. Notwithstanding any failure by Mitchell to avail herself of those remedies, available state-law remedies satisfy her right to due process. Accordingly, it is recommended that any claim under section 1983 be dismissed for failure to state a claim.

(ii) <u>Section 1988</u>

The other federal statute cited by Mitchell in the second paragraph of the two-paragraph count entitled "Claim for Deprivation of Rights under 42 U.S.C. § 1983", 42 U.S.C. § 1988, does not itself provide a cause of action. *Moor v. Alameda Cnty.*, 411 U.S. 693, 710 (1973); *Henderson v. Reyda*, 193 Fed. App'x 392, 397 (6th Cir. 2006);

*Vaughan v. City of Shaker Heights*, No. 1:10-CV-0609, 2011 WL 5966808, at *1 n.2 (N.D. Ohio Aug. 30, 2011), *report and recommendation adopted*, 2011 WL 5966732 (N.D. Ohio Nov. 28, 2011), *rev'd in part on other grounds*, 2013 WL 518443 (6th Cir. Feb. 12, 2013); *Cortis v. City of Coleman*, No. 10-13261-BC, 2011 WL 1518901, at *6 (E.D. Mich. Apr. 20, 2011). Plus, Mitchell is not entitled to an award of attorney fees as a *pro se* plaintiff. Accordingly, it is recommended that any claim under 42 U.S.C. § 1988 be dismissed for failure to state a claim.

In summary, Mitchell fails to state in her complaint a claim arising under any federal law, and therefore the court lacks subject-matter jurisdiction under 28 U.S.C. § 1331.

D.  The Remaining State-Law Claims

Mitchell purports to assert, under state common law, claims for Fraud and Misrepresentation, (Compl., D.E. 1 ¶¶ 28-34); Wrongful Foreclosure, (Compl., D.E. 1 ¶¶ 35-39); The Debt is Discharged/Payed [sic], (Compl., D.E. 1 ¶¶ 40-44); Slander of Title, (Compl., D.E. 1 ¶¶ 45-47); Unlawful Interference with Possessory Interest, (Compl., D.E. 1 ¶¶ 48-51); Conflict of Interest, (Compl., D.E. 1 ¶¶ 52-54); and Lack of Standing to Commence Foreclosure Action, (Compl., D.E. 1 ¶¶ 55-58).[6]

1.  *Jurisdiction over Remaining State-Law Claims*

---

[6]  In the sections entitled "Injunctive Relief" and "Declaratory Relief," there are no factual allegations. To the extent these sections set forth remedies sought and not causes of actions, these two sections fail to state any plausible claim.

As discussed above, the court has determined that every federal claim asserted by the plaintiff should be dismissed for failure to state a claim and lack of federal subject-matter jurisdiction. Without a basis for federal jurisdiction, the court should not exercise supplemental jurisdiction over any state-law claims by Mitchell. *See* 28 U.S.C. § 1367(c)(3)("The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."). Accordingly, it is recommended that any remaining state-law claims be dismissed pursuant to 28 U.S.C. § 1367(c)(3).

2. *Dismissal of Remaining State-Law Claims for Failure to State a Claim Pursuant to Rule 12(b)(6)*

The state-law claims should also be dismissed for failure to state a claim because the complaint fails to state any plausible claims under state law. The court has already determined herein that Mitchell has failed to plead a claim for fraud with particularity as required by Rule 9, in that she failed to identify any false statement allegedly made by any defendant, and much less, the time and date of any false representations.

Mitchell's purported state-law claims for Unlawful Interference with Possessory Interest and Conflict of Interest are not recognized torts in Tennessee, and her purported state-law claims for Wrongful Foreclosure, The Debt is Discharged/Payed [sic], and Lack of Standing are not supported by existing state law. It appears these claims are based on the theory that Mitchell attempted to pay the balance due on her county taxes by an electronic funds transfer ("EFT") in the

21

amount of $6,000 sent by certified mail to Owens, which discharged the debt even though Owens refused to accept the EFT, and therefore the defendants did not have any authority to foreclose on her property. The court has already determined that the Mitchell's EFT claim lacks merit because an EFT involves an electronic transfer, not one by certified mail. Moreover, Mitchell has pleaded no plausible facts to support her theory.

Mitchell's purported state-law claim for Slander of Title likewise is not supported by any plausible facts. To establish a claim for slander of title under Tennessee law, a plaintiff must show: "(1) that it has an interest in the property, (2) that the defendant published false statements about the title to the property, (3) that the defendant was acting maliciously, and (4) that the false statement proximately caused the plaintiff accumulative loss." *Brooks v. Lambert*, 15 S.W.3d 482, 484 (Tenn. Ct. App. 1999). The complaint fails to allege any malice or any facts that would give rise to a reasonable inference of malice. *See Waterhouse v. McPheeters*, 145 S.W.2d 766, 767 (Tenn. 1940)(allegations of malice must be in express terms or by showing facts which would give rise to a reasonable inference of malice). Thus, Mitchell fails to state a claim for slander of title.

## III. RECOMMENDATION

For the foregoing reasons, it is recommended that the complaint be dismissed *sua sponte* for lack of subject-matter jurisdiction and failure to state a claim, pursuant to Rules 12(b)(1), 12(b)(6), and

12(h)(3) of the Federal Rules of Civil Procedure as to all the defendants, and that judgment be entered for all the defendants.

Respectfully submitted this 16th day of May, 2013.

s/ Diane K. Vescovo
Diane K. Vescovo
United States Magistrate Judge

NOTICE

Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy. FED. R. CIV. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.